IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| BRUCE LAMAR HILL, | : |
| Plaintiff, | : |
| vs. | :   CIVIL ACTION 08-00448-KD-C |
| ANTHONY WEAVER, et al., | : |
| Defendants. | : |

REPORT AND RECOMMENDATION

Plaintiff, an Alabama prison inmate proceeding pro se and in forma pauperis filed a Complaint under 42 U.S.C. § 1983.  This action was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4), and is now before the undersigned on Defendants' Motion for Summary Judgment.  (Docs. 10, 11).  For the reasons stated below, it is recommended that Defendants' Motion for Summary Judgment be granted and that Plaintiff's action against these Defendants be dismissed with prejudice.  In light of this recommendation, Plaintiff's Motion for a Rule 26 (f) meeting (Doc. 16) and Motion to Compel Defendants to Respond to Plaintiff's First Set of Interrogatories (Doc. 17) are each hereby **DENIED** as moot.

I.  SUMMARY OF ALLEGATIONS AND PROCEEDINGS

1. Based upon a review of the record, the Court notes the following allegations material to the issues addressed in this Report and Recommendation.

2.  Plaintiff, while incarcerated at Holman Correctional Facility ("Holman"),

claims that on August 1, 2007, Defendant Correctional Officer Anthony Weaver used a chemical agent on him while Plaintiff "was secured behind (a) cell door with handcuffs on behind [his] back with only underwear on." (Doc. 1 at 4, Complaint).

      3.  Plaintiff also claims that "COI Weaver knew he was acting with evil motive and intent while constantly spraying chemical agent in my back for about a minute straight without cause. He called me a nigger." (Id.).

      4.  Regarding Defendants Captain Craft, Warden Bishop, and Sergeant Banks, Plaintiff states that he filed a complaint to them regarding this incident but received no response. He further alleges that these three Defendants have each

> "failed to investigate complaints of excessive use of force with chemical agent by officers and ... have failed to supervise, train and instruct its employees and for tacitly authorizing a culture in which prisoners are exposed to an increased risk of physical abuse causing emotional / psychological duress."

(Id.).

      5.  Plaintiff claims that the chemical agent caused irritation on his back. He stated the following in his Complaint:

> "COI Moody arrived at the cell. He had to unhandcuff me so I could get dressed to go to the infirmary. After decontamination the fumes were still so strong he was coughing. When we were in the infirmary, Nurse Hammack could not believe the irritation on my back, arms, buttocks. She asked, did he spray a whole can on you (sic) and was coughing and she asked had I showered, my skin was burning for 3 days (sic)."

(Id.).

6. On July 31, 2008, Plaintiff filed the present § 1983 action, alleging violations of the Eighth and Fourteenth Amendments, and the Due Process Clause. (Doc. 1).

7. Plaintiff seeks an award of compensatory and punitive damages, attorneys fees, and an order from the Court for a "change of policy with use of chemical agents and institute grievance policy from ADOC for inmates." (Doc. 1 at 5).

8. In the Answer filed on June 22, 2009, Defendants Weaver, Craft, Bishop, and Banks deny Plaintiff's allegations and assert the defenses of absolute and state agent immunity.[1]  (Doc. 10 at 1-2, Answer).  Defendants also assert that there can be no respondeat superior and no failure to train and supervise in this section 1983 action.  (Id. at 2).

9. Defendant Correctional Officer Anthony Weaver avers that, on August 1, 2007, Officer Weaver handcuffed Plaintiff and sent him to the showers.  (Doc. 11, Ex. B at 1, Affidavit of Anthony Weaver).  Approximately fifteen minutes later, Officer Weaver returned to the shower area where he was advised by Officer Michael Branch that Plaintiff would not follow his order to exit the shower.  (Id.).  According to prison rules, inmates have five minutes in which to complete their showers.  (Id.).

10. Officer Weaver ordered Plaintiff to exit the shower, and Plaintiff responded that "'yall ain't going to rush me out of my shower.'" (Id. at 2).  When Officer Weaver

---

[1] It is unclear as to whether Plaintiff has sued Defendants in their official and/or individual capacities.  As state officials, Defendants are absolutely immune from suit for damages in their official capacities, see Harbert Int'l, Inc. v. James, 157 F.3d 1271, 1277 (11th Cir. 1998) (state officials sued in their official capacities are protected from suit for damages under the Eleventh Amendment).

3

gave Plaintiff a second order to exit the shower, Plaintiff refused and began putting soap on his body again.  At this point Officer Weaver removed his canister of Freeze Plus P and cautioned Plaintiff that he would be sprayed if he did not exit the shower.  (Id.).

11. Plaintiff did exit the shower but was loud and abusive toward Defendant Weaver, trying to face Defendant Officer Weaver and argue with him. (Id.).  Plaintiff was repeatedly insubordinate with Officer Weaver on the way to Plaintiff's cell, calling Officer Weaver a "bitch," and threatening "'when I get in my cell I'm going to show you something.'" (Id.).

12.  Once Plaintiff was secured in his cell, Officer Weaver unlocked Plaintiff's handcuffs and Plaintiff snatched the cuffs out of Weaver's hand causing Officer Weaver's left hand to be scraped and his handcuff key to be broken.  (Id. at 3).  When Plaintiff then refused a direct order to return the handcuffs and instead continued to be loud and abusive, Defendant Officer Weaver sprayed Plaintiff with a one second burst of Freeze Plus P and closed the tray door.

13.  Defendant Weaver then immediately notified Defendant Sergeant Banks of the incident, and Sergeant Banks and Officer Moody escorted Plaintiff to the infirmary to be decontaminated.  Following decontamination, Plaintiff was returned to his cell.  (Id.).

14. On July 9, 2009, the Court ordered that Defendants' Special Report and Answer be treated as a Motion for Summary Judgment.  (Doc. 12).  On August 10, 2009, Plaintiff filed a Motion for an Extension of Time to respond to Defendants' Motion for Summary Judgment, and this Court granted Plaintiff's request on September 29, 2009.

(Docs. 13, 14).  As noted previously, Plaintiff filed a Motion for a Rule 26(f) meeting and a Motion to Compel Defendants to Respond to Plaintiff's First Set of Interrogatories on November 25, 2009, and this Court entered an Order temporarily denying those motions on December 2, 2009.  (Docs. 16, 17, 18).

## II.  SUMMARY JUDGMENT STANDARD

1. In analyzing the propriety of a motion for summary judgment, the Court begins with these basic principles.  The Federal Rules of Civil Procedure grant this Court authority under Rule 56 to render "judgment as a matter of law" to a party who moves for summary judgment.  "[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. . . .'"  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c).

2. The Court must view the evidence produced by "the nonmoving party, and all factual inferences arising from it, in the light most favorable to" that party.  Barfield v. Brierton, 883 F.2d 923, 934 (11th Cir. 1989).

3. However, Rule 56(e) states that:

> an adverse party [to a motion for summary judgment] may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e); see also Celotex Corp., 477 U.S. at 325-27.

  4. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. . . .  If the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (internal citations omitted).  "Summary judgment is mandated where a party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'"  Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc., 508 F.3d 641, 647 (11th Cir. 2007) (citations omitted).

### III.  DISCUSSION

  1. As discussed above, Plaintiff seeks redress in this action pursuant to 42 U.S.C. § 1983 for alleged constitutional deprivations arising out of an altercation between himself and Defendant Weaver on August 1, 2007, while Plaintiff was incarcerated in the Holman Correctional Facility.

  2. Plaintiff claims that Defendant Officer Perkins used excessive force in spraying a chemical agent onto his backside.

  3. Plaintiff further claims that Defendants Captain Craft, Warden Bishop, and Sergeant Banks violated his constitutional rights by their failure to investigate complaints of excessive force, and for their authorization of a culture in which prisoners are exposed to an increased risk of physical abuse.  (Doc. 1 at 4).

  4. Section 1983 provides in pertinent part that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the

> District of Columbia, subjects, or causes to be subjected, any
> citizen of the United States or other person within the
> jurisdiction thereof to the deprivation of any rights, privileges,
> or immunities secured by the Constitution and laws, shall be
> liable to the party injured in an action at law, suit in equity, or
> other proper proceeding for redress. . . .

42 U.S.C. § 1983 (1994).

5. In addressing Plaintiff's claims brought under § 1983, the Court begins its analysis "by identifying the specific constitutional right allegedly infringed. . . ." Graham v. Connor, 490 U.S. 386, 394 (1989). Plaintiff claims that he has suffered a violation of his Eighth Amendment right to be protected from punishment that is cruel and unusual, as well as a violation of his Due Process rights.[2]

A. Excessive Force

6. The Eighth Amendment, which attaches "after conviction and sentence," protects incarcerated prisoners, like Plaintiff, from punishment that is "cruel and unusual." Graham, 490 U.S. at 392 n. 6, 394. Specifically, the Eighth Amendment "prohibits the unnecessary and wanton infliction of pain. . . , the infliction of pain totally without penological justification. . . , [and] the infliction of punishment grossly disproportionate to the severity of the offense." Ort v. White, 813 F.2d 318, 321 (11th Cir. 1987) (citing Rhodes v. Chapman, 452 U.S. 337, 346 (1981)).

7. In order to establish an Eighth Amendment claim, an inmate must prove both an

---

[2]Although Plaintiff states in his Complaint that he is claiming violations of "Due Process," he has not alleged facts consistent with a Due Process violation. Thus, the Court construes Plaintiff's Complaint as alleging violations of the Eighth Amendment.

objective and subjective component.  First, the plaintiff must show that the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation, and, second, he must show that "the officials act[ed] with a sufficiently culpable state of mind," *i.e.*, that they acted "maliciously and sadistically to cause harm."  Hudson v. McMillian, 503 U.S. 1, 7-8 (1992).

8.  Considering, first, the objective element of Plaintiff's claim, Plaintiff alleges that Defendant Weaver sprayed him with a chemical agent, while Plaintiff was handcuffed behind his back.  (Doc. 1 at 4).

9.  Inherent in the protection afforded by the Eighth Amendment is the principle that "not 'every malevolent touch by a prison guard gives rise to a federal cause of action.'"  Clark v. Johnson, 2000 WL 1568337, *12 (S.D. Ala. 2000) (unpublished)[3] (quoting Hudson, 503 U.S. at 9-10).  Indeed, "'[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.'"  Hudson, 503 U.S. at 9 (citations omitted).  The objective component of an Eighth Amendment excessive force claim "necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'"  Hudson, 503 U.S. at 9-10 (quoting Whitley v. Albers, 475 U.S. 312, 327 (1986)).

---

[3]"Pursuant to Eleventh Circuit Rule 36-2, unpublished opinions are not considered binding precedent, but may be cited as persuasive authority."  Lanier Constr., Inc. v. Carbone Props. of Mobile, LLC, 253 Fed. Appx. 861, 865, 2007 WL 3307384, *3 (11th Cir. 2007).

10. While the Supreme Court in <u>Hudson</u> did not define "*de minimis* use of force," it did hold that neither "serious" nor "significant" injury is required to satisfy the objective component of an Eighth Amendment claim, nor is any arbitrary quantum of injury an absolute requirement of an excessive force claim, apparently out of concerns that certain forms of torture are capable of inflicting extreme pain without leaving any mark or tangible injury.  <u>Id.</u> at 9.  ("Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury.").  At the same time, the court suggested that the degree of injury received is relevant to determining whether more than *de minimis* force was used. <u>See</u> <u>id.</u>, 503 U.S. at 10 (blows causing bruising, swelling, loosened teeth and a cracked dental plate do not constitute a *de minimis* use of force).

11. In the present case, there are no allegations of torture designed to inflict extreme pain without leaving tangible injury or conduct that otherwise is so egregious that one could reasonably call it repugnant to the conscience of mankind.  Therefore, if Plaintiff suffered only *de minimis* injuries, that would be an important factor in determining whether more than *de minimis* force was used.

12. Plaintiff's records reflect that he was taken to the prison infirmary immediately following the altercation with Officer Weaver.  (Doc. 11, Ex. A at 7).  Plaintiff's complaint was that his back was burning because "it got sprayed."  (<u>Id.</u>).  It was noted that he was in good condition, and no medication or medical treatment was necessary. (<u>Id.</u>).

13. The record in this action is devoid of evidence of injury to Plaintiff from his exposure to pepper spray.  Notably, even Plaintiff does not allege any significant, lasting ill effects from the pepper spray.

14. Considering the evidence in the light most favorable to Plaintiff, the question is whether a jury could reasonably conclude that Defendant Weaver violated Plaintiff's rights under either the Eighth Amendment.

15. While the Court is aware that, even in the absence of serious or significant injury, a plaintiff can establish a constitutional claim based on excessive force, Defendant's actions in this case, as described by Plaintiff, do not involve diabolic or inhuman torture designed to inflict extreme pain without leaving any mark or tangible injury, nor are they otherwise so egregious that one could reasonably call them repugnant to the conscience of mankind.  The Court further notes that the proper use of pepper spray is an accepted and valid practice.  See Danley v. Allen, 540 F.3d 1298, 1303 (11th Cir. 2008) ("[P]epper spray is an accepted non-lethal means of controlling unruly inmates..."); Fischer v. Ellegood, 238 Fed. Appx. 428 (11th Cir. 2007) (unpublished); Vinyard v. Wilson, 311 F.3d 1340 (11th Cir. 2002).

16. Accordingly, the Court finds that, in this case, Plaintiff's allegations simply do not support his claim that he was subjected to anything other than *de minimis* force, which is insufficient to establish a constitutional violation under the Eighth Amendment

17. Accordingly, Plaintiff's excessive force claim fails as a matter of law.

B. Claims Against Banks, Craft and Bishop.

18.  Plaintiff claims that Defendants Captain Craft, Warden Bishop, and Sergeant Banks failed to investigate complaints of the excessive use of force with chemical agents by officers, and that each Defendant also "failed to supervise, train and instruct its employees" and "authoriz[ed] a culture in which prisoners are exposed to an increased risk of physical abuse causing emotional/psychological duress." (Doc. 1 at 4).

19.  In order to state a claim upon which relief can be granted in a § 1983 action, Plaintiff must establish a causal connection between each defendant's "actions, orders, customs, policies, or breaches of statutory duty and the alleged deprivation of his constitutional rights." Frankum v. Chapman, 2009 WL 1118875, *3 (S.D. Ala. 2009) (citations omitted).

20.  Liability for an alleged constitutional violation cannot be established on the basis of a theory of *respondeat superior*. See Edwards v. Alabama Dep't of Corrs., 81 F. Supp. 2d 1242, 1255 (M.D. Ala. 2000) ("A theory of *respondeat superior* is not sufficient to support [a] § 1983 claim. . . .").

21.  "It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); Gonzalez, 325 F.3d at ----, 2003 WL 1481583, at *4 (concluding supervisory officials are not liable on the basis of respondeat superior or vicarious liability). Instead, supervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation. Gonzalez, 325 F.3d at ----, 2003 WL 1481583, at *5; Brown v. Crawford, 906 F.2d 667, 671

11

> (11th Cir. 1990). The necessary causal connection can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so." Gonzalez, 325 F.3d at ----, 2003 WL 1481583, at *5 (quoting Braddy v. Fla. Dept. of Labor & Employment, 133 F.3d 797, 802 (11th Cir.1998)); Brown, 906 F.2d at 671. Alternatively, the causal connection may be established when a supervisor's "'custom or policy ... result[s] in deliberate indifference to constitutional rights'" or when facts support "an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Gonzalez, 325 F.3d at ----, 2003 WL 1481583, at *5 (quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)); Hartley, 193 F.3d at 1263; see also Post v. City of Ft. Lauderdale, 7 F.3d 1552, 1560-61 (11th Cir. 1993). "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." Gonzalez, 325 F.3d at ----, 2003 WL 1481583, at *4 (internal quotation marks and citation omitted).

Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003).

22. In instances in which supervisory liability is based on a supervisor's custom or policy, a plaintiff must show that the custom or policy was "the 'moving force [behind] the constitutional violation.'" Pinkney v. Davis, 952 F. Supp. 1561, 1569 (M.D. Ala. 1997) (citations omitted).

23. "[I]t is clear that not only must there be some degree of 'fault' on the part of [defendant] in establishing the policy or tolerating the custom, but there must be a causal link between the custom or policy and the constitutional deprivation." Id. (citations omitted).

24. Plaintiff has failed to put forth anything more than a vague, conclusory

12

statement that Defendants Craft, Bishop and Banks "authorized" a "culture" in which the inmates are exposed to an increased risk of physical abuse.  Plaintiff has offered no facts to support his claim of a policy or custom of physical abuse at Holman, nor has he offered any allegations of a history of widespread abuse of inmates at Holman.

25.  Given the absence of evidence of a causal connection between the actions of Defendants Warden Watson Bishop, Captain David Craft, and Sergeant LaNetta Banks, and the alleged constitutional deprivations, Plaintiff's claim fails as a matter of law.

## IV.  CONCLUSION

26. If a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial," Rule 56(c) mandates that summary judgment be entered against the nonmovant. Celotex Corp., 477 U.S. at 322.

27. "No material issues can be in dispute where the plaintiff's evidence fails to establish a constitutional violation."  Bennett v. Parker, 898 F.2d 1530, 1534 (11th Cir. 1990).  Therefore, since no constitutional violation has been established, Defendants' Motion for Summary Judgment is due to be granted.

28. Based on the foregoing, the Court concludes that Defendants are entitled to summary judgment in their favor on all claims asserted against them by Plaintiff.

29. Accordingly, it is recommended that the Motion for Summary Judgment of Defendants Officer Anthony Weaver, Warden Watson Bishop, Captain David Craft, and Sergeant LaNetta Banks be GRANTED and that the entirety of Plaintiff's Complaint

against these Defendants be DISMISSED with prejudice.

The instructions which follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

DONE this 18th day of February, 2010.

     s/WILLIAM E. CASSADY
    **UNITED STATES MAGISTRATE JUDGE**

# MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

1.      *Objection*.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982) (*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days[4] after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      *Transcript (applicable Where Proceedings Tape Recorded)*.  Pursuant to 28 U.S.C. § 1915 and FED. R. CIV. P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States

---

[4] Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]"  Fed. R. Civ. P. 72(b)(2).

will pay the cost of the transcript.

                                                                               s/WILLIAM E. CASSADY  
                                                                              UNITED STATES MAGISTRATE JUDGE